IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN WILLIAMS, *et al.,* | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:05-CV-1395-N |
| | § | |
| DEUTSCHE BANK AG, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER TO REMAND

Before the Court is the motion to remand of Plaintiffs John Williams, *et al.* Because the removal was untimely under section 1446(b), and because the transactions in question do not fall under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), the Court grants the motion to remand.

### I. FACTUAL BACKGROUND

This case involves a supposedly tax-advantaged strategy that turned sour. Between 1999 and 2001, Plaintiffs allegedly implemented a tax-advantaged investment strategy (the "Strategy") involving foreign exchange digital options[1] contracts ("FX Contracts") that Defendants Deutsche Bank AG, Deutsche Bank Securities, Inc., Deutsche Bank Alex.

---

[1] According to Plaintiffs' Second Amended Petition ¶ 56, "digital options" are not traditional options where one has an option to buy or sell securities, but are a pure bet of a specified dollar amount that the price of something will or will not exceed or fall below a specific price on a specific date. For example, a digital option might provide that the holder will receive $1000 if the price of Google stock exceeds $500 on December 31, 2006.

Brown, Alex. Brown & Sons, BT Alex. Brown, Inc., Craig Brubaker, and Todd Clendening (collectively, the "Deutsche Defendants") developed.

Plaintiffs contend Defendants exaggerated the chance of making a profit off the FX Contracts. In addition to generating a tax loss, Defendants allegedly marketed the Strategy as offering the possibility of a much larger gain if the currency closing price fell between two spot rates at the moment the options matured. Plaintiffs maintain that the Deutsche Defendants originally told them that they designed the contracts to give a 30% to 40% chance of making an actual profit. However, Plaintiffs claim the real chance of earning money was nonexistent, not only because the price difference was not only extremely narrow, but also because Deutsche Bank had a choice in picking which spot rate to use in determining whether the contract paid out. Unfortunately for Plaintiffs, the Strategy drew the IRS's attention. The IRS offered to settle its tax claims with the Plaintiffs in May 2004 if the Plaintiffs would pay all taxes evaded by using the Strategy, plus penalties and other fees.

Plaintiffs originally brought suit in Texas state court seeking seeking damages resulting from the FX Contracts on a variety of legal theories. Defendants removed the case federal court based upon 28 U.S.C. §§ 1331, 1441 (federal question) and 9 U.S.C. § 205 (the Convention). Plaintiffs timely moved to remand.

## II. FEDERAL QUESTION REMOVAL WAS UNTIMELY UNDER SECTION 1446(B)

Defendants contend that they properly removed under 28 U.S.C. § 1441 because this Court has federal question jurisdiction under 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the

Constitution, laws, or treaties of the United States." The Supreme Court recently clarified that for purposes of federal question jurisdiction a case also "arises under" federal law when "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods. Inc. v. Darue Eng'g & Mfg.*, 125 S. Ct. 2363, 2368 (2005). Defendants maintain that adjudication of Plaintiffs' claims necessarily depends upon the resolution of the meaning of a federal tax provision, "an important issue of federal law that sensibly belongs in a federal court." *Id.* Because the Court finds Defendants' removal under section 1441 untimely, it need not address whether Plaintiffs' state law claims present a federal question removable under *Grable*.

Regardless whether Plaintiffs' claims necessarily depend on interpreting a tax statute, this Court does not have jurisdiction unless removal was timely. Defendants had thirty days after receipt of the pleadings or alternatively the summons to remove under 28 U.S.C. § 1446(b), yet failed to do so. Defendants contend that this Court still has jurisdiction under the second paragraph of section 1446(b), because Defendants removed the case to federal court "within thirty days after receipt . . . [of an] order or other paper from which it may first be ascertained that the case is one which is or has become removable."

Defendants maintain that two court opinions in other cases constitute the required order or paper from which they could first ascertain that this case was removable. First, they argue that the Supreme Court's *Grabel* decision constitutes the requisite order or other paper

ORDER TO REMAND - PAGE 3

because it indicated that a plaintiff may remove a claim to federal court when important questions of federal tax law are at issue, even if no private right of action exists under the tax law in question. *Grabel*, 125 S. Ct. at 2368 (finding that the meaning of the federal tax provision in question was "an important issue of federal law that sensibly belong[ed] in federal court"). Second, they contend that *Becnel v. KPMG* held for the first time on June 21, 2005, that there was federal question jurisdiction over the same type of claims at issue in the case. *Becnel v. KPMG LLP,* No. 05-6015, 2005 WL 2016246 (W.D. Ark. June 21, 2005).

Most courts have found that decisions in other cases do not constitute "an order or other paper" under section 1446(b). *See Green v. R. J. Reynolds Tobacco Co.*, 274 F.3d 263, 266-67 (5th Cir. 2001) (citing *Morsani v. Major Legue Baseball,* 79 F. Supp. 2d 1331, 1333-34 (M.D. Fla. 1999)) (stating "plain language of the statute . . . implies the occurrence of an event within the proceeding itself"); *Lozano v. GPE Controls,* 859 F. Supp. 1036, 1038 (S.D. Tex. 1994) (holding that a court decision is not an "other paper" under the statute). *Johansen v. Employee Benefit Claims, Inc.*, 668 F. Supp. 1294, 1296-97 (D. Minn. 1987) (interpreting "other paper" as applying to documents generated within only the state court litigation, not an extraneous case). The Fifth Circuit has created a limited exception to this rule. Where a court's decision in a different case involves the same defendant, a similar factual situation, and the question of removal, that case can constitute an "order" under section 1446(b). *See Green*, 274 F.3d at 267 (citing *Doe v. American Red Cross*, 14 F.3d 196 (3d Cir. 1993)).

ORDER TO REMAND - PAGE 4

The *Grabel* and *Becnel* decisions do not fit within this standard, as neither case involved these defendants.

The Court declines to interpret "other order or paper" more broadly than the Fifth Circuit.  The Defendants correctly state that *Green* did not explicitly hold commonality of defendants was a prerequisite for an unrelated decision to constitute an "order or other paper" under section 1446(b).  Yet the Fifth Circuit specifically stated that only "under these very narrow circumstances" could one cite a new court decision as an "'order' for purposes of §1446(b) removal."  *Green*, 274 F.3d at 268.  The Court is reluctant to extend *Green*'s holding given this limiting language.  Additionally, expanding *Green*'s limited exception would conflict with the great majority of the case law that *Green* positively cited, and would also render the time limit meaningless as it would restart the removal clock each time an unrelated court finds federal jurisdiction.

Accordingly, the Court finds that removal was untimely under section 1446(b).

## III. THIS COURT DOES NOT HAVE JURISDICTION UNDER 9 U.S.C. § 205

Defendants alternatively assert that this Court has jurisdiction under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), 9 U.S.C. §§ 201-208.[2]  Defendants contend that removal under the Convention was proper because: (i) Plaintiffs' suit arises out of their participation in the tax-advantaged investment Strategy; (ii) to implement the Strategy, some Plaintiffs entered into Account Agreements

---

[2]Plaintiffs argue that the petition for removal was untimely only with respect to the federal question ground of jurisdiction.  The Convention explicitly allows removal of any case within its ambit at any time.  9 U.S.C. § 205

containing broad mandatory arbitration clauses that bind all Plaintiffs and are enforceable by all Deutsche Bank Defendants; (iii) the multicomponent Strategy envsioned performance abroad, and had a substantial relationship to a foreign state; and (iv) the subject matter of this action relates to the Account Agreements that Plaintiffs executed in furtherance of the Strategy.

Under the Convention, removal is proper where "the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention." 9 U.S.C. § 205. The Fifth Circuit applies a lenient standard for determining whether the subject matter of a proceeding "relates to" an arbitration for purposes of 9 U.S.C. § 205:

> [W]henever an arbitrartion agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case, the agreement "relates to" the plaintiff's suit. . . . As long as the defendant's assertion is not completely absurd or impossible, it is at least conceivable that the arbitration clause will impact the disposition of the case. That is all that is required to meet the low bar of "relates to."

*Beiser v. Weyler,* 284 F.3d 665, 669 (5th Cir. 2002) (emphasis in original). On the other hand, even if the subject matter of a dispute relates to an arbitration agreement, the agreement must still "fall under the Convention" in order to be removable to this Court.

> An agreement or award . . . which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states.

9 U.S.C. § 202.

ORDER TO REMAND - PAGE 6

The Account Agreements do not satisfy this test. The only foreign citizen in this litigation, Deutsche Bank AG, was not a party to the Account Agreements with the arbitration clause. Thus, the Account Agreements here are "entirely between citizens of the United States." *Id*. As a result, an Account Agreement falls under the convention only if "it involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states." 9 U.S.C. § 202. None of those criteria applies.[3]

First, the Account Agreements did not involve property located abroad as the digital option transaction apparently took place in the United States and the consideration for the digital option apparently was United States currency. Recall that digital options do not contemplate actual exchange of the option subject, *see* Plaintiffs' Second Amended Petition ¶ 56, and thus the digital options here did not actually involve the transfer of foreign currency. Second, the mere fact that a domestic signatory of the agreement is a subsidiary of a foreign corporation, Deutsche Bank AG, does not give the arbitration agreement a "reasonable relation" with a foreign state.[4] *Accord Ling v. Deutsche Bank AG*, No.

---

[3]In determining whether any of those criteria apply, the burden is on the Deutsche Defendants to establish subject matter jurisdiction. "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *accord Ford v. NYLCare Health Plans of the Gulf Coast, Inc.*, 301 F.3d 329, 332 (5th Cir. 2002). Thus, to the extent any of those criteria turn on factual matters, the Deutsche Defendants bear the burden of providing the Court with evidentiary support of those facts.

[4]*Beiser* does not control the "reasonable relation" question, because Beiser "did not contest that the arbitration agreements 'fall[] under the Convention' within the meaning of §205."
(continued...)

ORDER TO REMAND - PAGE 7

4:05CV345 (E.D. Tex. Nov. 23, 2005) (Bush, M.J.), slip op. at 10.  Third, the Account

Agreements do not appear to envisage enforcement abroad; they do not call for arbitration

in a foreign forum, and do call for application of New York law.

Finally, the Court must determine whether the agreement envisaged performance

abroad.  Precedent on envisaging performance abroad is scant.  The Fifth Circuit found in

*Freudensprung v. Offshore Technical Services, Inc.* that a contract for performance of

pipefitting services on barges in West Africa "envisaged performance abroad."

*Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 340-41 (5th Cir. 2004).

In *Lander Co. v. MMP Invs.*, the Seventh Circuit held that an agreement to distribute

American-made products in Poland envisaged foreign performance.  *Lander Co. v. MMP*

*Invs.*, 107 F.3d 476, 482 (7th Cir. 1997).

The present case differs from the previous cases.  Unlike *Freudensprung* and *Lander*,

the contracts here contemplated "digital options" on foreign currency, which involved as

little foreign performance as a bet between Americans on the outcome of a European soccer

---

[4](...continued)
*Beiser*, 284 F.3d at 667.  The Plaintiffs here certainly contest that issue.  Moreover, *Beiser*'s
expansive reading of "relates to" in section 205 of the convention, *see id.* at 668-69, does not
apply to the "reasonable relation" language in section 202.  First, they are in different
sections.  Second, different language is used; section 202 tempers the broad reach of
"relation" with the moderating "reasonable," unlike section 205's open-ended "relates to."
Third, in today's global economy, reading "reasonable relationship with one or more foreign
states" to include merely having a foreign shareholder would cause virtually every contract
with a publicly traded company that contained an arbitration clause to "fall under the
Convention," a result not plausibly intended by the Convention.  The Circuit has noted,
however, that "doubts as to whether a contract falls under the Convention [] should be
resolved in favor of arbitration . . . ."  *Francisco v. Stolt Achievement MT*, 293 F.3d 270, 274
(5th Cir. 2002).

match. This Court declines to extend the meaning of "envisages performance abroad" to such domestic paper transactions.

The Deutsche Defendants also argue that the Account Agreements envisage performance abroad in that they authorize DB Alex. Brown to "purchase Foreign Securities . . . from or sell Foreign Securities . . . to an affiliate of Deutsche Bank AG." This argument fails for three reasons. First, "an affiliate" does not equate to a *foreign* affiliate performing abroad, *see Ling v. Deutsche Bank AG, supra*, and the record is silent on any actual performance abroad by any foreign affiliate. *See supra* note 3. Second, it would appear that "envisages performance abroad" means performance by the parties to the agreement. The fact that DB Alex. Brown might enter into a contract with a hypothetical foreign affiliate does not mean that the Account Agreement envisages performance abroad *by DB Alex. Brown*. DB Alex. Brown could perform its part of any such hypothetical transaction anywhere in the United States there is a phone line or internet access. To expand "envisages performance abroad" beyond the performance by the immediate contracting parties could send courts scurrying up and down supply chains looking for any possible foreign performance by any tangentially involved participant. That would be an unreasonable construction of the Convention. Third, the fact that the Account Agreement authorized transactions in foreign securities (or currency) does not necessarily envisage performance abroad any more than any other domestic transaction in imported goods, e.g., buying some sneakers made in China at the local Wal-Mart. Accordingly, the arbitration agreement does not "fall under the Convention" and this Court does not have subject matter jurisdiction.

ORDER TO REMAND - PAGE 9

**IV. CONCLUSION**

Neither 28 U.S.C. § 1441 nor 9 U.S.C. § 205 supports removal of this case.

Accordingly, pursuant to 28 U.S.C. § 1447, the Court grants Plaintiffs' motion to remand and

remands this case back to the 298th Judicial District Court of the State of Texas.

SIGNED February 9, 2006.

_____
David C. Godbey
United States District Judge

ORDER TO REMAND - PAGE 10